**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **ROBERT HAGEN,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. __________** |
| | § | |
| **RYAN GLEN NEVILLE, Individually, and RAINS COUNTY, TEXAS,** | § | |
| | § | |
| | § | |
| ***Defendants.*** | § | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Robert Hagen ("Plaintiff" or "Mr. Hagen") files this Original Complaint against Defendants Ryan Glen Neville ("Neville"), individually, and Rains County, Texas (the "County"), and in support respectfully shows the Court as follows:

**I.**

**NATURE OF THE ACTION**

1. This is a civil rights action arising from the use of excessive force against Plaintiff by then–Rains County Sheriff's Deputy Ryan Glen Neville during Plaintiff's arrest on or about September 4, 2024, while Plaintiff was experiencing a mental-health crisis related to his bipolar disorder, and from Rains County's ensuing detention of Plaintiff for approximately seventy days without medical care or any accommodation of his disability. Plaintiff brings claims under 42 U.S.C. § 1983 for excessive force, for municipal liability, and for the denial of medical care and unconstitutional conditions of pretrial confinement; under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*; under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and, against Neville individually, for assault and battery under Texas common law.

## II.

## PARTIES

2. Plaintiff Robert Hagen is an individual who resides in the State of Texas. He may be contacted through undersigned counsel.

3. Defendant Ryan Glen Neville is an individual who, at all times relevant to this Complaint, was employed as a deputy with the Rains County Sheriff's Office and was acting under color of state law. He is sued in his individual capacity only. Neville is no longer employed by the Rains County Sheriff's Office and may be served with process at 2959 FM 2946, Lot #2, Emory, Texas 75440, or wherever he may be found.

4. Defendant Rains County, Texas is a governmental unit and political subdivision of the State of Texas. It may be served with process by serving the Rains County Judge, Brent D. Hilliard, at the Rains County Courthouse, 220 W. Quitman St., Emory, Texas 75440, pursuant to TEX. CIV. PRAC. & REM. CODE § 17.024(a) and FED. R. CIV. P. 4(j)(2).

## III.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), because this action arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, under Title II of the Americans with Disabilities Act, and under Section 504 of the Rehabilitation Act.

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims against Defendant Neville under 28 U.S.C. § 1367(a), because those claims arise from the same case or controversy as Plaintiff's federal claims and form part of the same operative facts.

7. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in Rains County, Texas, and Rains County lies within the Tyler Division of the Eastern District of Texas. *See* 28 U.S.C. § 124(c)(1).

**IV.**

**FACTUAL BACKGROUND**

8. On or about September 4, 2024, Plaintiff was involved in a verbal altercation with his mother at the home in Rains County, Texas where he resided. At the time, Plaintiff was experiencing a manic episode—a mental-health crisis related to his bipolar disorder—and his mother called for assistance. Rains County Sheriff's Office personnel, including then-Deputy Neville, responded to the scene and arrested Plaintiff for criminal trespass. Plaintiff's mental-health crisis was apparent, or reasonably should have been apparent, to Neville and to the other officers present, based on Plaintiff's presentation and the circumstances of the encounter.

9. Mr. Hagen was unarmed. He did not threaten Neville or any other officer, did not attempt to flee, and did not physically resist arrest. Any failure by Mr. Hagen to comply instantly with directions was, at most, passive, and was itself a manifestation of his apparent mental-health crisis.

10. Neville did not attempt de-escalation, negotiation, or any measured or ascending response before resorting to force. Instead, in the course of handcuffing and arresting Mr. Hagen, Neville struck him, discharged a taser against him, and wrenched his arms with such force that Neville dislocated Mr. Hagen's shoulder. Neville applied and manipulated the handcuffs in a manner that lacerated both of Mr. Hagen's wrists, leaving permanent scarring.

11. On information and belief, the encounter was captured on video and audio, including body-worn and/or dash-camera recordings in the possession of Rains County.

12. Emergency medical personnel who responded to the scene examined only the lacerations on Mr. Hagen's wrists; no one examined or treated his shoulder. Mr. Hagen was then booked into the Rains County Jail, where he was detained as a pretrial detainee for approximately seventy days, much of that time in segregation, without any medical treatment for his dislocated shoulder or other injuries and without any treatment for or accommodation of his acute mental illness. His placement in segregation was imposed in response to behavior that was symptomatic of his untreated mental illness.

13. Under 37 TEX. ADMIN. CODE § 273.5, the County was required to complete a mental-health screening instrument for Mr. Hagen immediately upon his admission to the jail and to check his prior mental-health history through the State's Continuity of Care Query system. Under 37 TEX. ADMIN. CODE § 273.2, the County was required to maintain a written plan for inmate medical, mental, and dental services, to have a qualified professional review any prescription medication Mr. Hagen was taking, and to provide access to a mental-health professional twenty-four hours per day. On information and belief, the County failed to comply with these obligations as to Mr. Hagen.

14. Under TEX. CODE CRIM. PROC. art. 16.22, not later than twelve hours after receiving credible information that may establish reasonable cause to believe that a defendant in custody has a mental illness, the sheriff must provide written or electronic notice to a magistrate; upon a finding of reasonable cause, the magistrate must order that a qualified mental-health expert interview the defendant and report in writing within ninety-six hours. Under TEX. CODE CRIM. PROC. art. 17.032, a magistrate shall release on personal bond, with appropriate mental-health treatment conditions, a defendant charged with a nonviolent offense whom the expert has found to have a mental illness and to be competent, unless good cause is shown otherwise. On information and belief, the Sheriff

failed to provide timely notice under article 16.22, and the County failed to engage this mandatory screening-and-diversion framework, leaving Mr. Hagen jailed and untreated for approximately seventy days.

15. Mr. Hagen was ultimately committed by court order to a state mental hospital, where his medication was stabilized, and he was then returned to the community—demonstrating that community-based mental-health treatment was an appropriate and available alternative to his prolonged, untreated detention in the Rains County Jail.

16. Because his injuries went untreated, Mr. Hagen continues to suffer pain and restricted motion in his shoulder and arm: he cannot sleep on his right side, cannot raise his right arm to wash his hair, and can no longer perform the physical work he performed before his arrest.

17. On November 25, 2024, Neville was criminally charged in *State of Texas v. Ryan Glen Neville*, Cause No. 6654, in the 8th Judicial District Court of Rains County, Texas, with Injury to a Disabled Individual, a third-degree felony under TEX. PENAL CODE § 22.04(f), for—in the words of the indictment—"intentionally and knowingly caus[ing] bodily injury to Robert Jerome Hagen, a disabled individual, by striking him." Neville's employment with the Rains County Sheriff's Office was terminated. At all times relevant to this Complaint, Neville was acting under color of state law.

18. The felony charge brought against Mr. Hagen arising from the same encounter—alleged injury to a public servant—was dismissed. The criminal-trespass charge against Mr. Hagen was resolved, and no outstanding conviction of Mr. Hagen would be called into question by a judgment in his favor in this action. The excessive force described above was inflicted while Mr. Hagen was not resisting and was temporally and conceptually distinct from any conduct underlying any charge brought against him.

19. On information and belief, the County, through the Rains County Sheriff, failed to adequately train and supervise its deputies, including Neville, in de-escalation and in the appropriate response to persons known or perceived to be experiencing a mental-health crisis. The minimum training required by the Texas Commission on Law Enforcement was inadequate to equip Rains County deputies for the usual and recurring situation of encounters with persons in mental-health crisis. On information and belief, the County's specific deficiencies included: outdated or inadequate taser training, including as to the capabilities and appropriate use of a taser; the absence of any crisis-intervention team, program, or policy; the absence of any policy governing responses to mental-health calls, including any requirement of de-escalation or of additional responding personnel; and the absence of any program or policy implementing the mental-health screening and diversion duties described in paragraphs 13 and 14 above.

20. On March 27, 2025, in response to a public information request, the Rains County Sheriff's Office stated—five separate times—that it "has no record of arrest for Robert Hagen on September 4, 2024." On information and belief, this absence or suppression of any record of Plaintiff's arrest and of the force used during it reflects the County's inadequate policies, training, and supervision regarding the documentation, reporting, and review of uses of force.

21. As a direct and proximate result of Defendants' conduct described above, Plaintiff suffered physical injury, pain and suffering, emotional distress, exacerbation of his underlying mental-health condition, permanent impairment and disfigurement, and economic loss, and has incurred and will incur expenses for medical and mental-health care.

## V.

## CAUSES OF ACTION

### COUNT I—42 U.S.C. § 1983: EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT (AGAINST DEFENDANT NEVILLE, INDIVIDUALLY)

22. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

23. At all relevant times, Neville acted under color of state law.

24. The Fourth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, prohibits the use of unreasonable force in effecting an arrest or seizure of a person, judged under the objective-reasonableness standard set forth in *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

25. Neville's use of force against Plaintiff was objectively unreasonable under the totality of the circumstances, including but not limited to: the minor, nonviolent nature of the offense for which Plaintiff was being arrested; the absence of any immediate threat Plaintiff posed to the safety of Neville or others; the absence of active resistance or attempted flight by Plaintiff; the fact that Plaintiff was visibly experiencing a mental-health crisis; and Neville's immediate resort to striking, tasing, and violently wrenching a non-resisting man without attempting de-escalation, negotiation, or any lesser alternative. It was clearly established well before September 4, 2024 that an officer may not tase, strike, or violently manhandle an arrestee who is not actively resisting arrest.

26. As a direct and proximate result of Neville's unreasonable use of force, Plaintiff suffered the injuries and damages described above.

27. Neville's conduct was undertaken with malice, or with reckless or callous indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages against Neville in his individual capacity.

**COUNT II—42 U.S.C. § 1983: MUNICIPAL LIABILITY**

**(AGAINST DEFENDANT RAINS COUNTY)**

28. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

29. Rains County is a "person" subject to suit under 42 U.S.C. § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

30. At all relevant times, the elected Rains County Sheriff was the County's final policymaker with respect to law-enforcement and jail operations, *see Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990); TEX. LOC. GOV'T CODE § 351.041, and promulgated and maintained the training, supervision, and use-of-force policies, practices, and customs described in this Complaint.

31. The County, through the Sheriff, maintained the policies, practices, and customs of inadequate training and supervision described in paragraph 19, and failed to adopt needed policies—including crisis-intervention and mental-health-response policies and adequate procedures for the documentation, reporting, and review of uses of force—despite the known and obvious consequences of those failures.

32. Encounters with persons experiencing mental-health crises are a usual and recurring duty of Rains County deputies. The County's failures described above amounted to deliberate indifference to the constitutional rights of persons, such as Plaintiff, with whom its deputies would predictably interact while in mental-health crisis.

33. Alternatively, or in addition, Rains County's Use of Force Policy, or the manner in which that policy was applied, interpreted, or enforced, constituted a policy, practice, or custom that caused the violation of Plaintiff's Fourth Amendment rights.

34. The County's policies, practices, customs, and failures to train and supervise were the moving force behind the violation of Plaintiff's Fourth Amendment rights, and Plaintiff suffered the injuries and damages described above as a direct and proximate result.

## COUNT III—42 U.S.C. § 1983: DENIAL OF MEDICAL CARE AND UNCONSTITUTIONAL CONDITIONS OF PRETRIAL CONFINEMENT (AGAINST DEFENDANT RAINS COUNTY)

35. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

36. As a pretrial detainee, Mr. Hagen had a right under the Due Process Clause of the Fourteenth Amendment to reasonable medical and mental-health care and to conditions of confinement that do not amount to punishment.

37. On information and belief, the Rains County Jail had no functioning system for providing medical or mental-health care to detainees: no adequate protocols, no adequate medical or mental-health staffing, and no functioning procedure for evaluating, monitoring, or treating detainees' serious medical and mental-health needs. These de facto policies and pervasive conditions—not any individualized medical judgment—resulted in the denial of all treatment to Mr. Hagen for approximately seventy days. Such conditions were not reasonably related to any legitimate governmental objective and amounted to punishment of a pretrial detainee.

38. Alternatively, or in addition, jail personnel who observed or were informed of Mr. Hagen's visibly dislocated shoulder, lacerated wrists, and acute untreated mental illness had

subjective knowledge of a substantial risk of serious harm and responded with deliberate indifference by providing no care of any kind; and the Sheriff, the County's final policymaker for the jail, failed to adopt and implement policies for detainee medical and mental-health care despite the obvious consequences of that failure, which was the moving force behind the deprivation of Mr. Hagen's rights.

39. Mr. Hagen's medical needs were serious and obvious: a visibly dislocated shoulder—a structural deformity apparent to any layperson—lacerated wrists, and an acute, untreated psychiatric condition, each a need for which the necessity of care would be apparent even to a layperson.

40. As a direct and proximate result, Mr. Hagen suffered substantial harm, including approximately seventy days of unnecessary and severe pain, the deterioration of his untreated injuries, permanent impairment of his shoulder and arm, and the exacerbation of his mental illness.

**COUNT IV—VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12132 (AGAINST DEFENDANT RAINS COUNTY)**

41. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

42. Mr. Hagen is a qualified individual with a disability within the meaning of 42 U.S.C. §§ 12102 and 12131(2). His bipolar disorder is a mental impairment that substantially limits one or more major life activities, including brain function, thinking, sleeping, and interacting with others; he has a record of such impairment; and he was regarded by Defendants as having such an impairment. Indeed, the State of Texas prosecuted Neville for injuring Mr. Hagen as "a disabled individual."

43. The County is a public entity within the meaning of 42 U.S.C. § 12131(1). Its law-enforcement activities and the services, programs, and activities of the Rains County Jail—including intake screening, medical and mental-health care, classification and housing, and the mental-health screening and diversion procedures described in paragraphs 13 and 14—are services, programs, and activities of a public entity.

44. Once the scene of Mr. Hagen's arrest was secure and Mr. Hagen was restrained and compliant, the County's officers were obligated to reasonably accommodate his known and obvious mental disability in the manner in which they handled and transported him. They did not. Instead, they treated the manifestations of Mr. Hagen's disability as criminality and subjected him to the force described above. To the extent Mr. Hagen was arrested because conduct caused by his disability was misperceived as criminal conduct, the arrest itself discriminated against him by reason of his disability.

45. During Mr. Hagen's approximately seventy-day detention, the County excluded him from participation in and denied him the benefits of the jail's services, programs, and activities, and failed to make the reasonable modifications required by 28 C.F.R. § 35.130(b)(7): it failed to screen and identify his disability as required; it denied him medical and mental-health care; and it segregated him for behavior symptomatic of his untreated disability rather than treating him—treatment worse than that afforded detainees without mental disabilities, imposed by reason of his disability.

46. Reasonable accommodations were obvious, available, and mandated by Texas law: the article 16.22 screening and notice procedures; the article 17.032 personal-bond and outpatient-treatment procedures; the jail mental-health screening, medication-review, and care obligations of 37 TEX. ADMIN. CODE §§ 273.2 and 273.5; and the continuity-of-care framework of 37 TEX.

ADMIN. CODE § 273.8. Providing these accommodations would have imposed no undue financial or administrative burden and would have worked no fundamental alteration of any County program—Texas law already required them. Mr. Hagen's eventual court-ordered commitment for stabilization, followed by his return to the community, confirms that these accommodations were appropriate from the outset. The County's failure instead subjected Mr. Hagen to approximately seventy days of unjustified institutional isolation in the jail, contrary to the integration mandate of 28 C.F.R. § 35.130(d).

47. The County's discrimination was intentional. The County had actual knowledge of Mr. Hagen's disability and its consequential limitations—his crisis was open, obvious, and apparent at arrest and at booking; the County's own mandatory screening obligations required its identification; the charge against Neville itself identified Mr. Hagen as a disabled individual; and Mr. Hagen's condition and behavior in the jail were patently symptomatic—and the County nonetheless made a deliberate choice, sustained over approximately seventy days, not to accommodate him. The County is vicariously liable under Title II for the discriminatory acts of its employees.

48. As a direct and proximate result, Mr. Hagen suffered economic loss, physical injury and its consequences, and emotional distress and mental anguish, and he seeks all compensatory damages recoverable under Title II, nominal damages, and reasonable attorneys' fees under 42 U.S.C. § 12205.

## COUNT V—VIOLATION OF SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794 (AGAINST DEFENDANT RAINS COUNTY)

49. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

50. On information and belief, the County, including its Sheriff's Office and jail, receives federal financial assistance within the meaning of 29 U.S.C. § 794(b).

51. By the conduct described above, the County excluded Mr. Hagen from participation in, denied him the benefits of, and subjected him to discrimination under its programs and activities solely by reason of his disability, in violation of Section 504. The standards applicable to Mr. Hagen's claims under Title II and Section 504 are materially identical.

52. As a direct and proximate result, Mr. Hagen suffered the damages described above and seeks all compensatory damages recoverable under Section 504, nominal damages, and reasonable attorneys' fees under 29 U.S.C. § 794a(b).

**COUNT VI—ASSAULT AND BATTERY**

**(AGAINST DEFENDANT NEVILLE, INDIVIDUALLY)**

53. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

54. Neville intentionally, knowingly, or recklessly caused physical contact with Plaintiff that was harmful or offensive, and to which Plaintiff did not consent. Neville's conduct constitutes assault and battery under Texas common law.

55. In so acting, Neville acted outside the scope of his employment: his intentional and criminal assault of Plaintiff—conduct for which Neville was criminally indicted and his employment terminated—was an independent course of conduct that served no purpose of Rains County and did not further any business of the County.

56. This claim is asserted against Neville in his individual capacity *only* and is not asserted against Rains County or under the Texas Tort Claims Act.

## VI.

## DAMAGES

57. As a direct and proximate result of Defendants' conduct described above, Plaintiff has suffered, and will continue to suffer, the following categories of damages: (a) physical pain and suffering, past and future; (b) medical and mental-health care expenses, past and future; (c) mental anguish and emotional distress, past and future; (d) physical impairment, past and future; (e) disfigurement, including permanent scarring; (f) exacerbation of a pre-existing mental-health condition; (g) loss of earning capacity, past and future; and (h) nominal damages.

## VII.

## EXEMPLARY / PUNITIVE DAMAGES

58. Plaintiff seeks an award of exemplary/punitive damages against Defendant Neville, individually, under 42 U.S.C. § 1983 and Texas common law, based on his malicious, willful, and/or reckless disregard for Plaintiff's rights.

## VIII.

## JURY DEMAND

59. Pursuant to FED. R. CIV. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Robert Hagen respectfully requests that Defendants be summoned to appear and answer, and that upon final trial, Plaintiff have and recover from Defendants the following:

a. Compensatory damages in any amount within the jurisdictional limits of this Court;

b. Exemplary/punitive damages against Defendant Neville, individually;

c. Pre-judgment and post-judgment interest as allowed by law;

d. Costs of court;

e. Reasonable attorneys' fees under 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794a(b);

f. Such other and further relief, at law or in equity, including declaratory relief, to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ Charles M. Stam*
Charles M. Stam
State Bar No. 24106462
Alexander G. Kykta
State Bar No. 24107841
THOMPSON STAM PLLC
4306 Yoakum Boulevard, Suite 300
Houston, Texas 77006
Email: charles@thompsonstam.com
Email: alex@thompsonstam.com
Email: e-service@thompsonstam.com
Telephone: (844) 846-7826
Facsimile: (713) 379-8076

**ATTORNEYS FOR PLAINTIFF**